### UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **MARY LOUISE SERAFINE**, | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MEGAN LAVOIE,** *Administrative* | § | |
| ***Director of the Office of Court*** | § | |
| ***Administration of Texas;***[1] **NATHAN** | § | **Case No. 1:20-CV-1249-RP-SH** |
| **HECHT,** *Chief Justice of the Supreme* | § | |
| *Court of Texas*; **AMY MEACHUM,** | § | |
| *Local Administrative Judge, Travis* | § | |
| *County, Texas;*[2] **VELVA R. PRICE,** | § | |
| *District Clerk, Travis County, Texas,* | § | |
| *all in their official capacities*, | § | |
| *Defendants* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
   **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Director David Slayton's Motion to Dismiss Second Amended Complaint (Dkt. 63), filed July 9, 2021; Defendants Judge Livingston and District Clerk Price's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 66), filed July 16, 2021; Defendant Chief Justice Hecht's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 70), filed July 29, 2021; Plaintiff's Motion for Leave to File Supplement to Second Amended Complaint (Dkt. 112), filed December 20, 2021; and the parties' response and reply briefs. The District Court referred to the undersigned Magistrate Judge all pending and future nondispositive

---

[1] On December 1, 2021, Megan LaVoie became the new Director of the Office of Court Administration. The Court substitutes Megan LaVoie for David Slayton pursuant to Federal Rule of Civil Procedure 25(d).

[2] On September 1, 2021, the Honorable Amy Clark Meachum of the 201st Judicial District of Travis County became the active Travis County Local Administrative Judge. The Court substitutes Amy Clark Meachum for Lora J. Livingston pursuant to Federal Rule of Civil Procedure 25(d).

and dispositive motions for resolution and Report and Recommendation, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 97.

## I.   Plaintiff's Litigation History

Plaintiff Mary Louise Serafine, a licensed attorney proceeding *pro se*,[3] challenges the constitutionality of the Texas Vexatious Litigants statute. The Court begins with a brief review of Plaintiff's litigation history.

### A.  Litigation Against Her Neighbors

In 2012, Plaintiff filed suit in state court against her former neighbors, Alexander and Ashley Blunt, alleging that (1) the Blunts removed a chain-link fence that had marked the boundary line between their properties for over three decades, then erected a wooden fence that encroached on her property, and (2) the Blunts trespassed on her land and damaged it by digging a trench on her land or immediately adjacent to it and by installing a drainage system that would destroy the lateral support of her land. *Serafine v. Blunt*, No. 03-20-00294-CV, 2021 WL 5456660, at *1 (Tex. App. Nov. 19, 2021). Plaintiff asserted causes of action for trespass to try title, trespass, nuisance, negligence, and fraud by nondisclosure; she sought declaratory and injunctive relief, damages, and attorneys' fees. *Id.* The Blunts asserted as counterclaims that Plaintiff tortiously interfered with their contract with a drainage and foundation company and that she violated Chapter 12 of the Texas Civil Practice and Remedies Code by fraudulently filing a *lis pendens* in the Travis County Real Property Records. *Id.* Plaintiff also sued the Blunts' fencing and drainage contractors for their involvement in the fence replacement. *Id.*

---

[3] According to her pleadings, Plaintiff graduated from Yale Law School in 1991 and is a licensed attorney in Texas, New York, and the District of Columbia. Second Amended Complaint (Dkt. 59) ¶ 21.

Travis County District Court Judge Karin Crump presided over the case. In 2015, Plaintiff's claims were tried to a jury, which unanimously decided against Plaintiff on all claims. *Id.* at 2. After trial, Judge Crump determined the boundary line between the properties, granted defendants' motion for sanctions, and rendered final judgment denying Plaintiff relief on all her claims. *Id.*

On appeal, the Third Court of Appeals affirmed the trial court's final judgment, except for the portion denying Plaintiff's motion for attorneys' fees and sanctions under the Texas Citizens Participation Act. *Id.* On remand, the trial court, the Honorable Lora J. Livingston presiding, rendered judgment awarding Plaintiff $25,000 in attorneys' fees and $5,000 in sanctions against the Blunts. *Id.* Plaintiff filed a motion to modify the judgment, seeking an increase in both the attorneys' fee award and the sanctions. The trial court denied the motion. Both sides appealed.

On appeal, Plaintiff argued that the trial court abused its discretion in making the fee award by disregarding guiding principles on segregation of attorneys' fees and "using improper and irrelevant factors" to reach a "low award." *Id.* she also asserted that the trial court "protect[ed] the Blunts fabrication" of evidence and "their repeated use of false testimony." *Id.* In their cross-appeal, the Blunts argued that the trial court abused its discretion by awarding excessive attorneys' fees and sanctions unsupported by the record. *Id.* The Third Court of Appeals agreed with the Blunts, finding that the imposition of attorneys' fees and sanctions was arbitrary and unreasonable and constituted an abuse of discretion. *Id.* at 8. Accordingly, the Third Court of Appeals remanded the case "for further proceedings solely on the issue of the amount of attorneys' fees and sanctions Serafine is entitled to under the TCPA." *Id.* Plaintiff did not file a petition for review.

**B. Litigation Against State Court Judges**

On November 28, 2017, Plaintiff filed a civil rights lawsuit in this Court seeking prospective injunctive relief against Judge Crump and the three justices of the Third Court of Appeals who presided over her state court proceedings in *Blunt*: Justices Melissa Goodwin, Bob Pemberton, and

David Puryear. *Serafine v. Crump*, No. 1:17-CV-1123-LY (W.D. Tex. Nov. 28, 2017). Plaintiff alleged that Judge Crump and the Justices repeatedly violated, and would continue to violate, her Fourteenth Amendment rights by knowingly creating false orders, judgment, and opinions, and by acting in bad faith.

On April 4, 2018, United States Magistrate Judge Mark Lane issued a Report and Recommendation that the District Court dismiss Plaintiff's lawsuit because the Court lacked subject matter jurisdiction to adjudicate Plaintiff's claims under the *Rooker-Feldman* doctrine. Dkt. 30. The District Court adopted the Report and Recommendation and dismissed Plaintiff's lawsuit for lack of subject matter jurisdiction. Dkt. 72. Plaintiff appealed.

On February 6, 2020, the United States Court of Appeals for the Fifth Circuit dismissed Plaintiff's appeal. The Fifth Circuit concluded that Plaintiff lacked standing under Article III of the United States Constitution to seek prospective injunctive relief against the state court judicial defendants because she failed to demonstrate "a substantial likelihood of a real and immediate threat of future injury by Appellees." *Serafine v. Crump*, 800 F. App'x 234, 238 (5th Cir.), *cert. denied*, 141 S. Ct. 623 (2020).

While her appeal was pending before the Fifth Circuit, Plaintiff filed an identical lawsuit in state court against the same state court judicial defendants. *Serafine v. Crump*, No. D-1-GN-19-002601 (345th Dist. Ct., Travis Cnty., Tex. May 10, 2019) ("State Lawsuit"); *see also* https://www.traviscountytx.gov/district-clerk/online-case-information ("State Lawsuit Docket").[4] The judicial defendants removed the case to federal court on the basis of federal question jurisdiction. *Serafine v. Crump*, 1:19-CV-641-LY (W.D. Tex. June 24, 2019), Dkt. 1. The judicial

---

[4] The Court takes judicial notice of the 345th District Court's docket and the Texas Third Court of Appeal's docket under Federal Rule of Evidence 201. *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (holding that district court may take judicial notice of state court docket).

defendants then moved to dismiss the case with prejudice, asserting *res judicata* and lack of standing because the case was duplicative of Plaintiff's previous federal lawsuit. Plaintiff agreed that this Court lacked jurisdiction over her State Lawsuit, but argued that the case should be remanded to state court rather than dismissed. The Magistrate Court recommended that the case be remanded to state court. Dkt. 80. The District Court agreed and, on November 14, 2019, remanded the case to state court, where it remains. *Id.* at Dkt. 84.

After the case was remanded, the defendants filed a motion to declare Plaintiff a vexatious litigant under Chapter 11 of the Texas Civil Practices and Remedies Code ("Chapter 11") § 11.051. The trial court held a hearing on the motion, during which Plaintiff presented evidence and argument.[5] On January 8, 2021, the court issued an order declaring Plaintiff a vexatious litigant, entered a prefiling order, and ordered Plaintiff to post $5,000 in security. Second Amended Complaint (Dkt. 59) ¶ 58;[6] State Lawsuit Docket. Plaintiff did not post the security. On January 28, 2021, she filed an interlocutory appeal, which is pending before the Texas Third Court of Appeals.[7]

## C.  This Litigation

Before she filed her state appeal, on December 28, 2020, Plaintiff filed this case under 42 U.S.C. § 1983, alleging that Chapter 11 is unconstitutional on its face and as applied. Dkt. 1. Specifically, Plaintiff alleges that Chapter 11 is unconstitutional under the First and Fourteenth Amendments to the United States Constitution because it (1) is a prior restraint on the right to petition, (2) violates due process and equal protection, (3) is overbroad, vague, and arbitrary and capricious, and (4) harms plaintiff's reputation. *Id.*

---

[5] Visiting judge Caldwell County District Judge Todd Blomerth presided over Plaintiff's case.

[6] Plaintiff's Second Amended Complaint erroneously states that the date of the order was January 8, 2020.

[7] Case No. 03-21-00053-CV, https://search.txcourts.gov/CaseSearch.

While Plaintiff asserts that "nothing about this [lawsuit] seeks vacatur of the state court order," Dkt. 77 at 5, the majority of her 43-page Second Amended Complaint attacks the state trial court's order in her State Lawsuit declaring Plaintiff a vexatious litigant. In addition, Plaintiff contends that the Texas court system is biased and "not capable of ensuring a neutral forum for the serious effort required to deprive a person of his rights under the vexatious litigant statute at Chapter 11." *Id.* ¶ 220. Plaintiff seeks declaratory and injunctive relief under the Declaratory Judgment Act and All Writs Act "to bar enforcement in any manner of Chapter 11 against Plaintiff and all Texans" and to declare Chapter 11 "void and unconstitutional as applied to Plaintiff" and on its face. *Id.* at 1, ¶ 283. Plaintiff also seeks costs, attorneys' fees, and a monetary award of one dollar. *Id.* ¶ 286.

Plaintiff originally named as defendants only Greg Abbott, in his official capacity as Governor of Texas, and Ken Paxton, in his official capacity as Texas Attorney General. Dkt. 1. After Defendants Abbott and Paxton moved to dismiss for lack of jurisdiction, Plaintiff filed an Amended Complaint voluntarily dismissing Abbott and Paxton and adding as defendants David Slayton, then Administrative Director of the Office of Court Administration of Texas; the Honorable Lora J. Livingston, Travis County District Court Judge and then-Travis County Local Administrative Judge; and District Clerk of Travis County Velva R. Price. Dkts. 19, 21.

Defendants Slayton, Livingston, and Price filed motions to dismiss for lack of jurisdiction and failure to state a claim. Dkts. 27, 36. Plaintiff moved the Court for leave to file a second amended complaint to add defendant the Honorable Nathan Hecht, Chief Justice of the Supreme Court of Texas, and "necessary facts that had not occurred at the time of the First Amended Complaint." Dkt. 52 at 2. On July 2, 2021, the District Court granted Plaintiff permission to file her Second Amended Complaint and mooted Defendants' motions to dismiss. Dkt. 58.

Shortly after Plaintiff filed her Second Amended Complaint, Defendants Slayton, Livingston,[8] and Price filed their second motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting lack of subject matter jurisdiction, sovereign immunity, abstention, and failure to state a claim. Dkts. 63, 66. Defendant Hecht also filed a motion to dismiss for lack of jurisdiction and immunity. Dkt. 70. Plaintiff opposes the motions.

## II.    Legal Standards

### A.  Texas Vexatious Litigants Statute

Chapter 11 of the Texas Civil Practices and Remedies Code provides a mechanism for the restriction of frivolous and vexatious litigation. TEX. CIV. PRAC. & REM. CODE ANN. § 11.001-104 (West 1997). When Chapter 11 was enacted in 1997, "the legislature struck a balance between Texans' right of access to their courts and the public interest in protecting defendants from those who abuse our civil justice system." *Leonard v. Abbott*, 171 S.W.3d 451, 455 (Tex. App. 2005, pet. denied).

### 1.  Declaring a Plaintiff a Vexatious Litigant

Chapter 11 provides that: "In a litigation in this state,[9] the defendant may, on or before the 90th day after the date the defendant files the original answer or makes a special appearance, move the court for an order: (1) determining that the plaintiff[10] is a vexatious litigant; and (2) requiring the plaintiff to furnish security." *Id.* § 11.051. Once the defendant files such a motion, "the litigation is stayed and the moving defendant is not required to plead: (1) if the motion is denied, before the

---

[8] As noted *supra*, after the Defendants filed their Motions to Dismiss, Megan LaVoie became the new Director of the Office of Court Administration and the Honorable Amy Clark Meachum became the Travis County Local Administrative Judge.

[9] "'Litigation' means a civil action commenced, maintained, or pending in any state or federal court." Chapter 11 § 11.001(2).

[10] "'Plaintiff' means an individual who commences or maintains a litigation pro se." *Id.* § 11.001(5). Chapter 11 "does not apply to an attorney licensed to practice law in this state unless the attorney proceeds pro se." *Id.* § 11.002(a).

7

10th day after the date it is denied; or (2) if the motion is granted, before the 10th day after the date the moving defendant receives written notice that the plaintiff has furnished the required security." *Id.* § 11.052.

Once the defendant files a motion under Section 11.051, "the court shall, after notice to all parties, conduct a hearing to determine whether to grant the motion." *Id.* § 11.053(a). At the hearing, "the court may consider any evidence material to the ground of the motion, including: (1) written or oral evidence; and (2) evidence presented by witnesses or by affidavit." *Id.* § 11.053. A court may find a plaintiff a vexatious litigant if the defendant demonstrates that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:

(1) the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been:

(A) finally determined adversely to the plaintiff;

(B) permitted to remain pending at least two years without having been brought to trial or hearing; or

(C) determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure;

(2) after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, pro se, either:

(A) the validity of the determination against the same defendant as to whom the litigation was finally determined; or

(B) the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined; or

(3) the plaintiff has previously been declared to be a vexatious litigant by a state or federal court in an action or proceeding based on the same or substantially similar facts, transition, or occurrence.

*Id.* § 11.054.

If the court determines that the defendant is a vexatious litigant "after hearing the evidence on the motion," it must order the plaintiff to furnish security for the benefit of the moving defendant

Case 1:20-cv-01249-RP   Document 118   Filed 01/26/22   Page 9 of 34

in an amount related to the costs and attorneys' fees the defendant anticipates incurring in defending the litigation. *Id.* § 11.055. If the plaintiff fails to furnish the court-ordered security by the time set in the order, the court must dismiss the suit. *Id.* § 11.056. The court "may, on its own motion or the motion of any party, enter an order prohibiting a person from filing, pro se, a new litigation in a court to which the order applies under this section without permission of the appropriate local administrative judge[11] described by Section 11.102(a) to file the litigation if the court finds, after notice and hearing as provided by Subchapter B, that the person is a vexatious litigant." *Id.* § 11.101(a). A litigant may appeal "from a prefiling order . . . designating the person a vexatious litigant." *Id.* § 11.101(c).

### 2.  Duties of the Local Administrative Judge

Chapter 11 Section 11.102(a) provides that:

> A vexatious litigant subject to a prefiling order under Section 11.101 is prohibited from filing, pro se, new litigation in a court to which the order applies without seeking the permission of:
>
> (1) the local administrative judge of the type of court in which the vexatious litigant intends to file, except as provided by Subdivision (2); or
>
> (2) the local administrative district judge of the county in which the vexatious litigant intends to file if the litigant intends to file in a justice or constitutional county court.

The local administrative judge "may make a determination on the request with or without a hearing." *Id.* § 11.102(c). The local administrative judge may grant permission to the vexatious litigant to file litigation "only if it appears to the judge that the litigation: (1) has merit; and (2) has

---

[11] Each county in Texas has a presiding local administrative judge who is appointed for a two-year term by the district judges in that county. TEX. GOV'T CODE ANN. § 74.091 (West 2017); Tex. R. Jud. Admin. 9, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. F app. (1992). The local administrative judge's duties primarily relate to administration of the district courts of the county in which the judge presides. *See* Tex. Gov't Code Ann. § 74.092. Other duties relevant here include granting permission to a vexatious litigant to file a lawsuit. Chapter 11 § 11.102(f).

9

not been filed for the purposes of harassment or delay." *Id.* § 11.102(d). If the local administrative judge denies the vexatious litigant permission to file, "the litigant may apply for a writ of mandamus with the court of appeals not later than the 30th day after the date of the decision." *Id.* § 11.102(f).

### 3. Duties of a Clerk of Court and the Office of Court Administration

A clerk of a court "may not file a litigation, original proceeding, appeal, or other claim presented, pro se, by a vexatious litigant subject to a prefiling order under Section 11.101 unless the litigant obtains an order from the appropriate local administrative judge described by Section 11.102(a) permitting the filing." *Id.* § 11.103(a). In addition, a clerk must "provide the Office of Court Administration of the Texas Judicial System a copy of any prefiling order under Section 11.101 not later than the 30th day after the date the prefiling order is signed." *Id.* § 11.104(a).

The Office of Court Administration ("OCA") must "post on the agency's Internet website a list of vexatious litigants subject to prefiling orders under Section 11.101." *Id.* § 11.104(b). The OCA "may not remove the name of a vexatious litigant subject to a prefiling order under Section 11.101 from the agency' Internet website unless the office receives a written order from the court that entered the prefiling order or from an appellate court." *Id.* § 11.104(c).

## B. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). In deciding a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts

plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* A court's dismissal of a case resulting from a lack of subject matter jurisdiction is "not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction*." Id.* Accordingly, such a dismissal should be made without prejudice. *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020), *as revised* (Dec. 30, 2020). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

## C. Limited Jurisdiction of the Federal Courts

Federal district courts are courts of limited jurisdiction and may exercise only such power as is expressly conferred by the Constitution and federal statutes, "which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is to be presumed that a case lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Id.* A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States" and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. U.S. CONST. art. III, § 2; 28 U.S.C. §§ 1331, 1332.

Article III of the United States Constitution confines the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. For a case or controversy to exist under Article III, the plaintiff must have a "personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish standing, a plaintiff must show that (1) she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury likely was caused by the defendant; and (3) the injury likely would be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## D. Sovereign Immunity

The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment codified the sovereign immunity of the states. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 253-54. "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

It is well established that sovereign immunity applies not only to actions in which a state itself is the named defendant, but also to actions against state agencies and instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[A] suit against an arm or instrumentality of the State is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017). Similarly, lawsuits brought against employees in their official capacity "represent only another

way of pleading an action against an entity of which an officer is an agent," and they also may be barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). "In short, Eleventh Amendment immunity is not limited to cases in which states are named as defendants. So, unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021). "[C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis*, 137 S. Ct. at 1290. In making this assessment, courts "may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.*

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court created a limited exception to sovereign immunity under which "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). "The exception rests on a legal fiction, the premise that a state official is 'not the State for sovereign-immunity purposes' when 'a federal court commands [him or her] to do nothing more than refrain from violating federal law.'" *Id.* (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 257 (2011)).

There are three basic elements of a lawsuit under *Ex parte Young*. The suit must (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief that will redress ongoing conduct; and (3) allege a violation of federal, not state, law. *Reeves*, 954 F.3d at 736. In addition, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a

representative of the state, and thereby attempting to make the state a party." *Young*, 209 U.S. at 157. To determine whether the exception applies, courts conduct a "straightforward inquiry" and do not consider the merits of the underlying claims. *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 471 (5th Cir. 2020). The burden of proof is on the party asserting jurisdiction. *Laufer v. Mann Hosp.*, *L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021).

### III.   Jurisdiction as to Each Defendant

The Defendants move to dismiss Plaintiff's claims on the bases of sovereign immunity, standing, failure to state a claim under Rule 12(b)(6), and abstention. Because the defendant's sovereign immunity and standing arguments go to the Court's jurisdiction, the Court must address those arguments first. *Ramming*, 281 F.3d at 161. As it must, the Court addresses separately whether it has jurisdiction as to each Defendant. *Coastal Habitat Alliance v. Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008) ("The court must assess the plaintiff's standing to bring each of its claims against each defendant.").

### A.  Defendant the Director of the OCA

Plaintiff brings this lawsuit against the Administrative Director of the Texas Office of Court Administration (the "Director") in her official capacity, alleging that the Director "executes the impairment of petition rights of 'vexatious litigants' by creating, updating, and disseminating the list of Texas citizens designated 'vexatious litigants' who are prohibited from filing *pro se* papers." Dkt. 59 ¶ 25. The Director argues that Plaintiff's claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity and the abstention doctrine established by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger*

14

abstention doctrine, however, is not jurisdictional.[12] Thus, the Court first addresses whether the doctrine of sovereign immunity deprives the Court of subject matter jurisdiction.

### 1. Sovereign Immunity

The Texas Office of Court Administration "is an agency of the state and operates under the direction and supervision of the supreme court and the chief justice of the supreme court." TEX. GOV'T CODE ANN. § 72.011 (West 1987). The OCA aids the Texas Supreme Court in carrying out its administrative duties by providing administrative support and technical assistance to all courts in the state. *Id.* §§ 72.021 to 72.038.

As a director of a state agency, the Director is entitled to sovereign immunity unless an exception to that doctrine applies. *See Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (sovereign immunity bars suits against state actors in their official capacities that effectively are suits against a state). It is undisputed that Texas has not consented to this suit and that Congress has not abrogated the State's immunity. Accordingly, the doctrine of sovereign immunity bars Plaintiff's claims for monetary damages against the Director. *Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020). Plaintiff's claims for injunctive and declaratory relief against the Director also are barred by sovereign immunity unless the *Ex parte Young* exception applies.

*Ex parte Young* concerned whether a federal court may enjoin a state official from enforcing an unconstitutional state law. 209 U.S. at 126-27. That case involved a challenge to a Minnesota law reducing the freight rates that railroads could charge. A railroad shareholder claimed that the

---

[12] As the Fifth Circuit has explained, "[f]ederal courts do not abstain on *Younger* grounds because they lack jurisdiction; rather, *Younger* abstention reflects a court's prudential decision not to exercise [equity] jurisdiction which it in fact possesses." *Weekly v. Morrow*, 204 F.3d 613, 614-15 (5th Cir. 2000) (internal quotation marks omitted). *But see Lively v. Tharp*, No. 5:20-CV-1311-OLG, 2021 WL 2930090, at *2 n.1 (W.D. Tex. June 29, 2021) (noting that some courts allow *Younger* abstention arguments to be raised through a Rule 12(b)(1) motion); 5B CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1350 n.12 (3d ed. Apr. 2021 Update) (collecting cases in which courts have allowed abstention arguments raised under Rule 12(b)(1)).

new rates were unconstitutionally confiscatory and obtained a federal injunction against Edward Young, the Attorney General of Minnesota, forbidding him in his official capacity from enforcing the state law. When Young violated the injunction by initiating an enforcement action in state court, the Circuit Court held him in contempt and committed him to federal custody. In his habeas corpus application to the Supreme Court, Young challenged his confinement by arguing that Minnesota's sovereign immunity deprived the federal court of jurisdiction to enjoin him from performing his official duties.

The Supreme Court disagreed, explaining that because an unconstitutional legislative enactment is "void," a state official who enforces that law "comes into conflict with the superior authority of [the] Constitution" and therefore is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id.* at 159-60. The Supreme Court avoided the apparent conflict with sovereign immunity by creating a legal "fiction" that a federal court does not violate state sovereignty when it orders a state official to do nothing more than uphold federal law under the Supremacy Clause. *Stewart*, 563 U.S. at 255; *Ex parte Young*, 209 U.S. at 159-60.

"Because this legal fiction infringes on state sovereignty, *Ex parte Young* and its progeny limit the exception." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 516 (5th Cir. 2017). Most relevant here, to be amenable to suit under the doctrine, the state actor must (1) possess "the authority to enforce the challenged law," and (2) "have a sufficient connection to the enforcement of the challenged act." *Haverkamp*, 6 F.4th at 670 (quoting *Ex parte Young*, 209 U.S. at 157); *see also Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 536 (2021) (noting that *Ex parte Young* "permits equitable relief against only those officials who possess

16

authority to enforce a challenged state law"); *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("Although the precise scope of the requirement for a connection has not been defined, the plaintiff at least must show the defendant has the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."), *cert. denied*, 141 S. Ct. 1124 (2021). "That means that the official must be statutorily tasked with enforcing the challenged law." *Id.* at 179. The Fifth Circuit has defined "enforcement" as involving "compulsion or constraint." *Air Evac EMS*, 851 F.3d at 518 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). "Thus, the *Ex parte Young* analysis turns on the complaint's context—including the challenged state law and defendants—to determine whether 'the state officer, by virtue of his office, has some connection with the enforcement of the act.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).

The Court finds that the Director does not possess "the authority to enforce the challenged law" and does not "have a sufficient connection to the enforcement of the challenged act." *Haverkamp*, 6 F.4th at 670. "Where a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, our *Young* analysis ends." *City of Austin*, 943 F.3d at 997.

For example, in *Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014), an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ") sued the Governor of Texas, challenging the constitutionality of a statute that required TDCJ inmates to pay a "health care services fee" if an inmate initiated a visit to a health care provider. *Id.* at 742. The statute specifically tasked the TDCJ, not the Governor, with responsibility for its enforcement. *Id.* at 745-46. Thus, the Governor was an improper defendant. "Section 501.063 does not specially task Governor Perry with its enforcement, or suggest that he will play any role at all in its enforcement. As a result, Governor

17

Perry is not a proper defendant." *Id.* at 746. Accordingly, the Fifth Circuit upheld the district court's dismissal of the inmate's claims against the Governor based on sovereign immunity. *Id.*

Plaintiff argues that the Director has "some connection" to the enforcement of Chapter 11 because if she "did not update, publish, and distribute the list of designated litigants, the Texas court clerks would file their pleadings and the statute would not accomplish its aim—to prevent those litigants from filing." Dkt. 68 at 15.[13] As in *Morris*, however, a state official other than the Director is statutorily tasked with enforcing Chapter 11. Chapter 11 grants only state and federal courts the power to declare a plaintiff a vexatious litigant and to enter a prefiling order requiring that litigant to obtain permission from a local administrative judge before filing new litigation. Chapter 11 § 11.054 ("A court may find a plaintiff a vexatious litigant . . . ."); *id.* § 11.101(a) ("A court may, on its own motion or the motion of any party, enter an order prohibiting a person from filing . . . .").

While Chapter 11 Section 11.104(b) provides that the OCA "shall post on the agency's Internet website a list of vexatious litigants subject to prefiling orders under Section 11.101," the statute does not grant the Director any power to declare a plaintiff a vexatious litigant or to enter a prefiling order. As noted *supra*, those powers lie within the exclusive province of the courts. Chapter 11 mandates that the Director "may not remove the name of a vexatious litigant subject to a prefiling

---

[13] In support of her argument that *Ex parte Young* applies, Plaintiff relies on *Wolfe v. Strankman*, 392 F.3d 358, 367 (9th Cir. 2004), in which the Ninth Circuit found that the Chair of the California Judicial Council and one of its employees could be sued in their administrative capacities under *Ex parte Young*. *Wolfe* is not binding on courts in the Fifth Circuit. Furthermore, the Ninth Circuit did not address whether state officials *enforced* the California statute, as required by the Fifth Circuit and Supreme Court. Instead, the Ninth Circuit simply stated that: "Wolfe has sued the defendants in their official capacities for prospective injunctive and declaratory relief. He does not seek damages. Thus, Wolfe's claims against Chief Justice George, Justice Strankman, and Ms. Silva fall within the *Ex parte Young* exception to sovereign immunity and are properly brought under § 1983." *Id.* at 365. For these reasons, *Wolfe* is not controlling here.

18

order under Section 11.101 from the agency' Internet website unless the office receives a written order from the court that entered the prefiling order or from an appellate court." *Id.* § 11.104(c).

The Court finds that posting on the OCA website a list of vexatious litigants subject to prefiling orders issued by trial courts under Section 11.101 cannot be considered "compulsion or constraint" under the statute. *See City of Austin*, 943 F.3d at 1001-02 (holding that Texas Attorney General lacked sufficient connection to enforcement where he did not "constrain" City from enforcing ordinance); *cf. Air Evac EMS*, 851 F.3d at 519 (holding that state officials were subject to *Ex parte Young* exception because they "constrain[ed]" air ambulance company's ability to collect more than maximum-reimbursement rate under workers' compensation statute and thus "effectively ensur[ed] the maximum-reimbursement scheme [was] enforced from start to finish"). Because the Director is not "statutorily tasked with enforcing the challenged law," *Ex parte Young* does not apply. *See Abbott*, 978 F.3d at 180 (holding that because Texas Governor was not "statutorily tasked with enforcing the challenged law," connection between Governor and enforcement of challenged provision was insufficient to apply *Ex parte Young*); *Morris*, 739 F.3d at 746 (same).

## 2. Standing

The Director's lack of authority to enforce Chapter 11 also shows that Plaintiff does not have standing to bring her claims against the Director. As stated *supra*, to establish standing, a plaintiff must show that (1) she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury was likely caused by the defendant; and (3) the injury likely would be redressed by judicial relief. *Lujan*, 504 U.S. at 560-61.

Plaintiff fails to allege an injury "fairly traceable" to the Director's allegedly unlawful conduct "and likely to be redressed by the requested relief." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). Under Chapter 11, the Director cannot remove the name of a vexatious litigant subject to a prefiling order from the list posted on the OCA website without a court order. The Director did

not declare Plaintiff a vexatious litigant and has no power to reverse that finding or remove litigants from the list posted on her website. Accordingly, Plaintiff fails to demonstrate standing to sue the Director. *See Stewart v. Wells*, No. 4:19-CV-00598-P-BP, 2020 WL 3146866, at *3 (N.D. Tex. May 26) (holding that plaintiff challenging the constitutionality of "the best interest of child" standard used in Texas Family Code lacked standing to sue state officials where "[n]one of the defendants have the authority to change the statute or affect the way in which the courts apply it"), *R. & R. adopted*, 2020 WL 3129645 (N.D. Tex. June 12, 2020). The Court does not have subject matter jurisdiction over the Director of the OCA.

Because the Court finds that it lacks jurisdiction over the Director of the OCA, it need not address the Director's alternative arguments for dismissal. The Court does address *infra* the *Younger* abstention argument, which applies to all defendants.

## B. Defendant Chief Justice Hecht

Plaintiff sues Chief Justice Nathan Hecht in his official capacity as Chief Justice of the Texas Supreme Court. Plaintiff alleges that Chief Justice Hecht, in his administrative capacity, "enforces and executes Chapter 11 by directing and supervising Mr. Slayton." Dkt. 59 ¶ 27. Chief Justice Hecht argues that the Court lacks jurisdiction to hear Plaintiff's claims due to lack of standing, sovereign immunity, and judicial immunity, and on grounds of abstention.[14]

"Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities as state actors." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 228 (5th Cir.

---

[14] Because Plaintiff is not suing Chief Justice Hecht in his individual capacity, the doctrine of absolute judicial immunity does not apply. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); *Kentucky*, 473 U.S. at 167 ("The only immunities that can be claims in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment."). Judicial immunity does not present a jurisdictional question. *Short v. Gusman*, 806 F. App'x 264, 267 (5th Cir. 2020) ("Unlike sovereign immunity, judicial immunity does not present a jurisdictional question.").

2009). Plaintiff's claims for monetary relief are barred by the doctrine of sovereign immunity. *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).[15]

Plaintiff's claims for injunctive and declaratory relief against Chief Justice Hecht are barred by sovereign immunity for the same reasons they are barred against the Director. Like the Director, Chief Justice Hecht is not "statutorily tasked with enforcing" Chapter 11. *Abbott*, 978 F.3d at 179. The Chief Justice is not mentioned in the statute and does not enforce Chapter 11 merely because he supervises the Director of the OCA in his administrative capacity. "A general duty to enforce the law is insufficient for *Ex parte Young*." *Abbott*, 978 F.3d at 181. Because Chief Justice Hecht is not "statutorily tasked with enforcing the challenged law," *Ex parte Young* does not apply. *Id.* at 179; *see also Jackson*, 142 S. Ct. at 534 (finding that *Ex parte Young* did not apply where "petitioners do not direct this Court to any enforcement authority the attorney general possesses in connection with S.B. 8 that a federal court might enjoying him from exercising"). Because Chief Justice Hecht is entitled to sovereign immunity, his Motion to Dismiss should be granted.[16]

## C. Defendant Travis County Local Administrative Judge

Plaintiff sues the Travis County Local Administrative District Judge ("LAJ") in her official capacity "in executing and enforcing Chapter 11." Dkt. 59 ¶ 28. The LAJ moves to dismiss Plaintiff's claims for lack of jurisdiction due to lack of standing, judicial immunity, and on grounds of abstention.

---

[15] Any claim by Plaintiff that Chief Justice Hecht is not entitled to sovereign immunity because he was performing administrative acts performed on behalf of the County, not the State, would fail because "Plaintiff seeks relief that would be provided by the state. The state, therefore, is the real, substantial party in interest making sovereign immunity applicable to plaintiff's claims against the judges in their official capacities." *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

[16] Because Plaintiff's claims are barred by sovereign immunity, the Court does not address Chief Justice Hecht's alternative arguments.

Plaintiff's claims against the LAJ should be dismissed because judges acting in their adjudicatory capacity are not proper parties under Article III of the Constitution or Section 1983. Article III affords federal courts the power to resolve only "actual controversies arising between adverse litigants." *Muskrat v. United States*, 219 U.S. 346, 361 (1911). In order to demonstrate that a case or controversy exists to meet the Article III standing requirement, a plaintiff must allege facts show that he and the defendants have adverse legal interests. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). The Supreme Court has held that "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" *Whole Woman's Health*, 142 S. Ct. at 532 (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)). "The requirement of a justiciable controversy is not satisfied where a judge acts in his adjudicatory capacity." *Bauer*, 341 F.3d at 358. "Judges exist to resolve controversies about a law's meaning or its conformance to the Federal and State Constitutions, not to wage battle as contestants in the parties' litigation." *Whole Woman's Health*, 142 S. Ct. at 532.

Similarly, it is well established that judges acting in their adjudicatory capacity are not proper Section 1983 defendants in a challenge to the constitutionality of state law. *Bauer*, 341 F.3d at 359. Since 1996, Section 1983 precludes injunction actions against judicial officers acting in their judicial capacity. 42 U.S.C. § 1983 (providing in relevant part that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"). Thus, whether the LAJ is a proper party under Section 1983 and whether there is a case or controversy depend on whether the LAJ acted outside of her adjudicatory capacity. *Bauer*, 341 F.3d at 360.

Plaintiff contends that she is suing the LAJ for actions taken in her administrative capacity in executing and enforcing Chapter 11, not for actions taken in her judicial capacity. But Plaintiff's allegations against the LAJ are directed to actions taken in her adjudicative role applying Chapter 11, which clearly states that the LAJ's role in executing Chapter 11 is adjudicative.

As stated *supra*, a vexatious litigant subject to a prefiling order is prohibited from filing any new litigation in a court without seeking permission from an LAJ. Chapter 11 § 11.102(a)(2). Under the statute, the LAJ may grant permission to a vexatious litigant to file new litigation "only if it appears to the judge that the litigation: (1) has merit; and (2) has not been filed for the purposes of harassment or delay." *Id.* § 11.102(d). Determining whether a lawsuit has merit or was brought for an improper purpose clearly falls within the judge's adjudicative capacity. *See Price v. U.S.*, 823 F. App'x 275, 276 (5th Cir. 2020) (finding that dismissal of lawsuit for frivolousness is conduct that "clearly falls" within judge's judicial capacity); *Holmes v. Lane*, No. 1:21-CV-986-LY-SH, 2021 WL 5979579, at *2 (W.D. Tex. Dec. 17, 2021) (finding that dismissal of case for frivolousness is act performed in a judge's judicial capacity); *Drake v. St. Paul Travelers Ins.*, No. 6:08-CV-301, 2009 WL 815999, at *5 (E.D. Tex. Mar. 26, 2009) (stating that "deciding a petition to declare a plaintiff a vexatious litigant is plainly a judicial act").

Because Plaintiff is suing the LAJ in her adjudicatory capacity under Chapter 11, there is no adversity between Plaintiff and the LAJ as to whether Chapter 11 is constitutional. *See Bauer*, 341 F.3d at 361 (finding there was no adversity between judge and plaintiff as to whether state probate statute was unconstitutional where judge acted in adjudicative capacity in appointing guardian ad litem under state probate statute). Therefore, there is no case or controversy under Article III, and the LAJ is not a proper party under section 1983. *Id.*

**D.  Defendant District Clerk Price**

Plaintiff sues the Honorable Velva R. Price in her official capacity as the District Clerk of Travis County, Texas for her role in executing and enforcing Chapter 11 "by rejecting attempted filings by a person whose name is on the 'vexatious' litigant list disseminated by the OCA." Dkt. 59 ¶ 30. Plaintiff does not have standing to bring this suit against Price.

Under Chapter 11 Section 11.103,

> a clerk of a court may not file a litigation, original proceeding, appeal, or other claim presented, pro se, by a vexatious litigant subject to a prefiling order under Section 11.101 unless the litigant obtains an order from the appropriate local administrative judge described by Section 11.102(a) permitting the filing.

In addition, the clerk of court "shall provide the Office of Court Administration of the Texas Judicial System a copy of any prefiling order issued under Section 11.101 not later than the 30th day after the date the prefiling order is signed." *Id.* § 11.104(a). The clerk of court has no authority to file a vexatious litigant's pleading unless she receives permission to do so from an LAJ. Similarly, the clerk has no authority to overrule a LAJ's decision.

As the U.S. Supreme Court has stated:

> Texas Rule of Civil Procedure 24 directs state-court clerks to accept complaints and record case numbers. The petitioners have pointed to nothing in Texas law that permits clerks to pass on the substance of the filings they docket—let alone refuse a party's complaint based on an assessment of its merits. Nor does Article III confer on federal judges some "amorphous" power to supervise "the operations of government" and reimagine from the ground up the job description of Texas state-court clerks.

*Whole Woman's Health*, 142 S. Ct. at 532. Accordingly, Plaintiff fails to allege an injury "fairly traceable" to Price's allegedly unlawful conduct and "likely to be redressed by the requested relief." *California*, 141 S. Ct. at 2113. Plaintiff thus has failed to demonstrate standing to sue Price. *See Stewart,* 2020 WL 3146866, at *3.

**E.  Conclusion as to Jurisdiction**

For the foregoing reasons, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's lawsuit as to each defendant.

## IV.    *Younger* Abstention Doctrine

Even if the Court had subject matter jurisdiction, the *Younger* abstention doctrine applies. "Federal courts, it was early and famously said, have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). The Supreme Court has cautioned that "a federal court's obligation to hear and decide a case is 'virtually unflagging.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976)). But a court's duty to exercise the jurisdiction given to it is not absolute. The Supreme Court has held that "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (cleaned up).

In *Younger v. Harris*, 401 U.S. 37, 53 (1971), which involved a facial First Amendment-based challenge to the California Criminal Syndicalism Act, the Supreme Court held that absent "extraordinary circumstances where the danger of immediate loss is both great and immediate, federal courts should not enjoin pending state criminal prosecutions." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600 (1975). The Supreme Court observed that "it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger*, 401 U.S. at 45. "That far-from-novel holding was based partly on traditional principles of equity, but rested primarily on the 'even more vital consideration' of comity." *New Orleans Pub. Serv., Inc.*

(*"NOPSI"*) *v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) (quoting *Younger*, 401 U.S. at 44). This includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*

The Supreme Court's concern for comity and federalism has led it to expand the protection of *Younger* beyond ongoing state criminal prosecutions, to certain civil enforcement proceedings and pending civil proceedings "involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns*, 571 U.S. at 78 (collecting cases). Relevant here, in *Huffman*, the Supreme Court held that *Younger* "bars a federal district court from intervening in a state civil proceeding . . . when the proceeding is based on a state statute believed by the district court to be unconstitutional." 420 U.S. at 594.

In *Huffman*, state officials instituted a proceeding under Ohio's nuisance statute in state court against an operator of a theater displaying "obscene" movies. *Id.* at 595. The state trial court found that the operator had displayed obscene movies, rendered a judgment in the state's favor, and ordered the theater closed for a year and the seizure and sale of the personal property used in its operation. *Id.* at 598. Rather than appealing the ruling within the Ohio court system, the operator immediately filed suit in federal court seeking declaratory and injunctive relief under Section 1983 that the statute was unconstitutional and unenforceable. *Id.* The federal district court held that the statute was an overly broad prior restraint on the operator's First Amendment rights insofar as it permanently prevented the showing of films which had not been adjudged obscene in prior adversary hearings. *Id.* at 599.

The Supreme Court held that the district court should have abstained under *Younger*. The Court reasoned that considerations of federalism counsel heavily against interference with state judicial proceedings because

> interference with such proceedings prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.

*Id.* at 604 (internal quotation marks omitted). The Court further held that "a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in *Younger*." *Id.* at 608.

> In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts. We therefore hold that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies.

*Id.* at 609. In *NOPSI*, the Court reiterated that

> a party may not procure federal intervention by terminating the state judicial process prematurely—forgoing the state appeal to attack the trial court's judgment in federal court. For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign."

491 U.S. at 368.

## A.  Plaintiff's Case Satisfies the Requirements to Apply *Younger* Abstention

The *Younger* abstention doctrine applies to the following "exceptional" categories of cases: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending

civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint Commc'ns*, 571 U.S. at 78. Plaintiff's case falls within the last category. Before applying *Younger*, however, courts in the Fifth Circuit consider whether there is "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (cleaned up).

The first prong is satisfied because there is "an ongoing state judicial proceeding." *Id.* at 222 (citation omitted). "The initial frame of reference for abstention purposes is the time that the federal complaint is filed. If a state action is pending at this time, the federal action must be dismissed." *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984). "In the most basic sense, a state proceeding is pending when it is begun before the federal proceeding is initiated and the state court appeals are not exhausted at the time of the federal filing." *Id.*

When Plaintiff filed her federal complaint on December 28, 2020, her state lawsuit was pending before the state trial court. In fact, the trial court had not yet ruled on the defendants' motion to declare Plaintiff a vexatious litigant or Plaintiff's motion challenging the constitutionality of Chapter 11. *See* No. D-1-GN-19-002601, https://www.traviscountytx.gov/district-clerk/online-case-information. The trial court did not declare Plaintiff a vexatious litigant until January 8, 2021. *Id.* Plaintiff filed her interlocutory appeal on January 26, 2021, which as of the date of this opinion remains pending before the Texas Third Court of Appeals. *See* No. 03-21-00053-CV, https://search.txcourts.gov/CaseSearch. Therefore, at the time of suit, there was an ongoing state judicial proceeding.[17]

---

[17] Plaintiff incorrectly asserts that her State Lawsuit is not a parallel state proceeding. *See* Dkt. 72 at 9–11.

The second prong also is satisfied because the ongoing state judicial proceeding "implicates important state interests." *Google*, 822 F.3d at 222. The Supreme Court "repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987) (collecting cases); *see also Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021) ("*Younger* counsels that federal courts should abstain from interfering with states' enforcement of their laws and judicial functions."). Specifically, the Supreme Court has found that "[t]he contempt power lies at the core of the administration of a State's judicial system." *Juidice v. Vail*, 430 U.S. 327, 335 (1977). Declaring a plaintiff a vexatious litigant and barring a plaintiff from filing is akin to a court's contempt power. In addition, states have an important interest in "enforcing the orders and judgments of their courts." *Pennzoil*, 481 U.S. at 13. Plaintiff's requested relief would interfere with both Texas' administration of its judicial system and the enforcement of its orders declaring certain plaintiffs vexatious litigants.[18]

The Court also finds that the third prong of *Younger* is satisfied because the state judicial proceeding "provides an adequate opportunity to raise federal challenges." *Google*, 822 F.3d at 222. In the abstention context, a federal court should not exert jurisdiction if the plaintiffs "had an *opportunity* to present their federal claims in the state proceedings." *Moore v. Sims*, 442 U.S. 415, 425 (1979). Thus, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Id.* at 425-26. Article VI of the Constitution states that "the Judges in every State shall be bound" by the Federal Constitution, laws, and treaties. "We cannot assume that state

---

[18] In its order denying the plaintiff's motion for reconsideration of its order granting the defendants' motion to stay discovery and pretrial proceedings, the District Court noted that Plaintiff's challenge to Chapter 11 "may very well interfere with a pending state 'civil proceeding involving certain orders uniquely in furtherance of the state court's ability to perform their judicial functions.'" Dkt. 49 at 3 (quoting *Sprint Commc'ns*, 571 U.S. at 78).

judges will interpret ambiguities in state procedural law to bar presentation of federal claims." *Pennzoil Co.*, 481 U.S. at 15. Accordingly, where a litigant has not attempted to present her federal claims in related state court proceedings, federal courts "assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.* As noted, Plaintiff raised her constitutional challenges to Chapter 11 in state court but filed this suit before the state court had an opportunity to rule on her constitutional challenges. Therefore, the Court assumes that the state court trial and appellate proceedings provided "an adequate opportunity" to raise her constitutional arguments. *Id.*

Because all three of the *Younger* factors are met, the *Younger* abstention doctrine applies, and the Court must abstain from hearing this case unless one of the narrowly delimited exceptions to the abstention doctrine applies. *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004).

**B. No Exception to *Younger* Abstention Applies**

*Younger* and its progeny

> allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whether manner and against whomever an effort might be made to apply it.

*Huffman*, 420 U.S. at 611 (internal quotation marks omitted). Plaintiff argues that these exceptions apply here. Plaintiff has the burden to establish actual proof of the exceptions. *Gates v. Strain*, 885 F.3d 874, 881 (5th Cir. 2018).

"The bad faith exception is narrow and is to be granted parsimoniously." *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 190 (5th Cir. 1996). The *Younger* exception for bad faith prosecutions primarily is applied in two circumstances: when a state commences a prosecution or proceeding to retaliate for or deter constitutionally protected conduct, or when the prosecution or proceeding

is taken in bad faith or for the purpose to harass. *Bishop v. State Bar of Texas*, 736 F.2d 292, 294

(5th Cir. 1984).

> To invoke this exception, the federal plaintiff must show the state
> proceeding was initiated with and is animated by a retaliatory,
> harassing, or other illegitimate motive. Mere conclusory allegations
> of bias are insufficient to overcome *Younger*—a plaintiff seeking to
> avoid *Younger* must affirmatively demonstrate the justification for
> application of an exception.

*Malone v. Dutton*, No. A-16-CA-1183-SS, 2017 WL 4399564, at *4 (W.D. Tex. Oct. 3, 2017)

(citations omitted), *appeal dismissed*, 2017 WL 9249944 (5th Cir. Dec. 6, 2017).

Plaintiff argues that the trial court acted in bad faith by refusing to hear many of her arguments.

Specifically, Plaintiff contends that the trial court refused to consider her motion to change venue,

her anti-SLAPP defense, whether she was excepted from Chapter 11 because she is a licensed

attorney, and failed to file findings of fact and conclusions of law. Yet Plaintiff filed this lawsuit

before the trial court had a chance to rule on many of her or the defendants' motions. *See Malone*,

2017 WL 4399564, at *3 (noting that plaintiff's inability to raise as-applied challenges at pretrial

stage did not preclude him from raising as-applied challenges later in the case). In addition, none

of the actions of which Plaintiff complains constitutes bad faith. Plaintiff offers no proof that the

trial court took any action for a retaliatory, harassing, or other illegitimate motive. Plaintiff simply

disagrees with the trial court's rulings, which is insufficient to show bad faith. *See Farkas v. Ocwen*

*Loan Servicing, L.L.C.*, 725 F. App'x 273, 277 (5th Cir.), *cert. denied*, 139 S. Ct. 386 (2018).

Plaintiff further argues that the Third Court of Appeals is "infected with bias." Dkt. 72 at 15.

A plaintiff may overcome the presumption of abstention if she shows that bias "render[s] the state

[body] incapable of fairly and fully adjudicating the federal issues before it." *Okorie v. Miss. Bd.*

*of Med. Licensure*, 739 F. App'x 301, 302 (5th Cir. 2018) (quoting *Kugler v. Helfant*, 421 U.S.

117, 124 (1975)). To overcome the presumption of abstention due to bias, however, the

adjudicative body must be so biased that it cannot constitutionally adjudicate the case before it. *Okorie*, 739 F.3d at 303. Plaintiff has not shown any personal bias or prejudice on the part of the trial courts or the Justices of the Third Court of Appeals. Nor has Plaintiff demonstrated that the trial court declared her a vexatious litigant and the appeals court affirmed solely to suppress her exercise of free speech rights, with no real hope of ultimate success. *See Younger*, 401 U.S. at 49 ("There is no suggestion that this single prosecution against [defendant] Harris is brought in bad faith or is only one of a series of repeated prosecutions to which he will be subjected."). Plaintiff has not alleged sufficient facts to show that the bad faith exception applies. *See RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 228-29 (5th Cir. 2009) (holding that plaintiff did not satisfy burden of proof where it submitted only the conclusional allegation that bad faith is "a description that fits both the state court civil suit against [plaintiff] and the threatened citation and prosecution of its advertisers").

Plaintiff moves for leave to file a supplement to her Second Amended Complaint to add further arguments in support of her motions and to attach a recent opinion from the Third Court of Appeals that she avers shows that court's bias. "Unlike motions to amend, motions to supplement need not be freely granted." *Smith v. Hebert*, 533 F. App'x 479, 483 (5th Cir. 2013) (citing *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998)). Courts may deny a motion to supplement if the "proposed pleading is futile in that it adds nothing of substance to the original allegations." *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983). The Court finds that Plaintiff's proposed supplement is more akin to supplemental briefing rather than a supplement to her complaint. The Court has considered Plaintiff's additional arguments in her motion and there is no need to grant the motion to supplement. Accordingly, Plaintiff's Motion to for Leave to File Supplement to Second Amended Complaint is **DENIED**.

Finally, the Court rejects Plaintiff's argument that the Court should not abstain under *Younger* because she is facially challenging the constitutionality of a state statute. As described in detail *supra*, *Younger* and many of the Supreme Court cases extending *Younger* involved constitutional challenges to state statutes. *E.g., Huffman*, 420 U.S. at 594. Moreover, the *Younger* Court expressly stated that "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good faith attempts to enforce it," especially absent "any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 53-54.

The Court recommends that the District Court apply the *Younger* abstention doctrine and abstain from exercising jurisdiction over this case.

### V.    Order and Recommendation

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Director David Slayton's Motion to Dismiss Second Amended Complaint (Dkt. 63), Defendants Judge Livingston and District Clerk Price's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 66), and Defendant Chief Justice Hecht's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 70), and **DISMISS** this case for lack of subject matter jurisdiction without prejudice under Rule 12(b)(1).

In the alternative, the Court **RECOMMENDS** that the District Court abstain from exercising jurisdiction under the *Younger* abstention doctrine and **DISMISS** this case under Rule 12(b)(6).

The Court **DENIES** Plaintiff's Motion for Leave to File Supplement to Second Amended Complaint (Dkt. 112).

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

33

### VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 26, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE